[Civ. No. 2374. Fifth Dist.. June 23. 1976.]

SEARS, ROEBUCK & COMPANY, Plaintiff and Appellant, v.
COUNTY OF KINGS et al., Defendants and Respondents.

**COUNSEL**

Jones, Hall & Arky, Jones, McCue & Hall, Philippe J. Monet, Baker, Ancel & Redmond and Gerald T. Manpearl for Plaintiff and Appellant.

Allen C. Wait, County Counsel, and Larry G. McKee, Assistant County Counsel, for Defendants and Respondents.

John H. Larson, County Counsel, and James Dexter Clark, Deputy County Counsel, as Amici Curiae on behalf of Defendants and Respondents.

**OPINION**

FRANSON, J.—This appeal involves the propriety of respondent's assessment of $37,031.97 in ad valorem personal property taxes on

imported tires owned by appellant and stored in two warehouses in Kings County on March 1, 1971. Appellant claims immunity from the tax under the import-export clause of the United States Constitution (art. I, § 10, cl. 2). The trial court held that the tires had lost their immunity when they were delivered to the warehouses, either in bulk lots or in sea vans, and commingled with other tires. Under the authority of *Michelin Tire Corp.* v. *Wages* (1976) 423 U.S. 276 [46 L.Ed.2d 495, 96 S.Ct. 535], and *Ralston Purina Co.* v. *County of Los Angeles* (1976) 56 Cal.App.3d 547 [128 Cal.Rptr. 556] (hg. den.), we conclude that the trial court correctly ruled that the assessment was lawful.

The facts are not in dispute. Appellant was an importer of steel-belted, radial-ply tires manufactured in Europe by Michelin. The tires were imported for sale through appellant's retail stores in 11 western states.

Appellant had a contractual arrangement with Armstrong Rubber Company by which Armstrong would store the tires at its warehouses in Hanford, Kings County, and ship the tires to appellant's retail stores pursuant to orders placed by appellant.

On the lien date, 74,656 Michelin tires were stored at the warehouses. The average turnover of a particular shipment of imported tires at the warehouses would be approximately three to four months' time.

## DISCUSSION

■ Article I, section 10, clause 2 of the United States Constitution provides in part: "No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its Inspection Laws; ... "

In *Michelin Tire Corp.* v. *Wages, supra,* 96 S.Ct. 535, the Supreme Court held that the State of Georgia's assessment of a nondiscriminatory ad valorem property tax on petitioner's inventory of imported tires at its wholesale distribution warehouses in the state was not within the constitutional prohibition against "imposts or duties" on imports. It explained that the framers of the constitution did not intend to exempt imported goods no longer in import transit from a nondiscriminatory ad valorem property tax, thereby overruling *Low* v. *Austin* (1872) 80 U.S. (13 Wall.) 29 [20 L.Ed. 517].[1]

---

[1]In *Low* v. *Austin, supra,* the Supreme Court had reversed the California Supreme Court's holding that imported wine held in the importer's warehouse in the original cases

In *Michelin Tire Corp., supra,* the tires were stored in a distribution warehouse where petitioner received wholesale orders from its franchised dealers and filled the orders from a constantly replenished inventory. It was noted that the warehouse was operated no differently than would be a distribution warehouse utilized by a wholesaler dealing solely in domestic goods.

The Supreme Court affirmed the Georgia court's holding without addressing the question of the point in time the imported tires had lost their status as imports. From this we infer that once goods have arrived in this state and are held for distribution, it becomes irrelevant to the imposition of nondiscriminatory ad valorem personal property taxes whether they arrived in sea vans or bulk lots, and whether they remained in their original package. Moreover, the distinctions between an importer, a wholesaler and a retailer, and whether the three functions are combined by vertical integration into one entity is no longer relevant to the imposition of such a tax. Since the tires in the present case had arrived at a warehouse for eventual distribution into appellant's marketing system they were no longer "in import transit" and their taxation is permissible.

Appellant asserts that *Michelin* should be given only prospective application. While *Michelin* failed to determine the question of retroactivity, we note that Michelin Tire Corporation's petition for rehearing on the ground that the decision should be applied prospectively was denied. (*Michelin Tire Corporation* v. *Wages* (1976) 424 U.S. 935 [47 L.Ed.2d 344, 96 S.Ct. 1151]; *Ralston Purina Co.* v. *County of Los Angeles, supra,* 56 Cal.App.3d at pp. 557-558.)

*Ralston Purina, supra,* has settled the retroactivity issue contrary to appellant's position. That case involved a suit for refund of ad valorem personal property taxes levied and paid under protest over an eight-year period on unlabeled cans of tuna imported from American Samoa and stored in leased warehouses in Los Angeles. The tuna was transferred from those warehouses to the main warehouse at Terminal Island when it was needed to supplement the domestic production and added to the inventory after it was labeled and cased. At that point, the Samoan tuna was indistinguishable from the domestic tuna. Although there was no set

---

in which it had been imported was subject to ad valorem property taxes levied by the City and County of San Francisco; the high court held that the wine was immune from tax while remaining in the original cases, unbroken and unsold, in the importer's warehouse.

period during which the Samoan tuna remained in storage before it was labeled and cased, it was usually stored for a three- to four-month period. (56 Cal.App.3d at pp. 550-551.)

■ The appellate court, noting the Supreme Court's failure to decide the retroactivity question in *Michelin*, cited the general rule that ". . . in the absence of a determination by [the Supreme Court] authorizing prospective application only, the general rule applies that the decision is retrospective in its operation." (*Ralston Purina Co.* v. *County of Los Angeles, supra*, 56 Cal.App.3d at p. 558; *County of Los Angeles* v. *Faus* (1957) 48 Cal.2d 672, 680-681 [312 P.2d 680].) Additionally, an analysis of the factors utilized in dealing with nonretroactivity supports the applicability of the general rule in this case, as in *Ralston Purina*. (See *Ralston Purina Co.* v. *County of Los Angeles, supra*, 56 Cal.App.3d at pp. 559-560.)

Appellant's remaining contentions are similarly without merit.

The judgment is affirmed.

Brown (G. A.), P. J., and Gargano, J., concurred.

A petition for a rehearing was denied July 21, 1976.